UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:19-CR-48-HAB |
| ) | |
| BRYANT D. ARON ) | |

**OPINION AND ORDER**

The Government charged Defendant, Bryant Aron ("Aron"), in a single count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). This matter is before the Court on the Defendant's Motion to Suppress Evidence (ECF No. 30) filed on November 18, 2020. The Defendant requests that the Court suppress all evidence obtained from the search of his vehicle at the time of his arrest on May 24, 2019.

On January 22, 2021, the Court held an evidentiary hearing on the motion. After the filing of the transcript from that hearing, the Defendant filed an opening brief (ECF No. 41) to which the Government responded on April 23, 2021 (ECF No. 42). The time provided for Defendant to file a reply expired without any additional filings. For the following reasons, the Court will DENY the Defendant's Motion to Suppress.

**FACTUAL BACKGROUND**

On May 24, 2019, while working a special shift on seatbelt patrol, Officer Robert Geiger with the Fort Wayne Police Department (FWPD) observed a Nissan Rogue fail to come to a complete stop at the intersection of Harris and Coliseum Blvd. (Evid. Hr'g Tr., ECF No. 40, at 9-

10) (hereafter, "Tr. at ___").[1] Officer Geiger pulled onto Coliseum Boulevard to follow the Nissan, intending to stop the Nissan and write the driver a warning ticket. (*Id.* at 11).

As the officer activated his lights, the Nissan did not stop, but instead, increased its speed. (Tr. at 11). The Nissan turned northbound onto Executive Blvd, in the area of an industrial complex, with Officer Geiger in tow. (*Id.*). The Nissan then entered a parking lot, left the pavement, drove onto a grassy area and into a culvert, went airborne, and crashed onto the roadway. (*Id.* at 13). Officer Geiger observed the driver, later determined to be Bryant Aron (Aron), lean towards the center console area "messing around with something" prior to exiting the running vehicle and fleeing in the opposite direction of Officer Geiger. (*Id.* at 13, 15).[2] Officer Geiger gave chase. Aron ignored Officer Geiger's commands to stop and continued running until he reached a fenced in area around a business. At that point, Aron dropped to the ground and surrendered. (*Id*. at 16). Aron was approximately 300 to 500 meters from the Nissan and the squad car at the time of his surrender.

Officer Geiger handcuffed Aron with his hands behind his back while he was on the ground. He did not complete an initial pat-down search as he wanted to get Aron back to an area where he knew other officers would be arriving. Officer Geiger then began escorting Aron back towards the Nissan and the officer's squad car.

By this time other officers were arriving on the scene. (Tr. at 18). As Officer Geiger passed the Nissan with Aron, he noticed for the first time, a female passenger in the Nissan. Once Officer Geiger and Aron reached the squad car, Officer Geiger conducted a pat down of Aron for officer

---

[1] Officer Geiger was in a marked police vehicle equipped with lights and siren and was dressed in a FWPD sanctioned uniform. (Tr. at 8).

[2] These events were captured on the in-car video that was admitted as Exhibit 1 during the evidentiary hearing.

safety and searched him incident to arrest. Officer Geiger testified that he "knew [Aron] was at least going to be arrested for fleeing in a vehicle." (*Id.* at 19). During the search, Officer Geiger located a Ruger magazine in Aron's pocket. (*Id.*). At that point, Officer Geiger believed a firearm may be inside the vehicle and alerted the other officers that a firearm may be in the vehicle or it may have been tossed during the foot pursuit. (*Id.* at 19–20). Based on his experience, Officer Geiger testified that "it's not very common for somebody to carry a magazine to a weapon without having a weapon itself." (*Id.* at 20).

Officer Geiger identified the driver as Bryant Aron and immediately recognized the name. Officer Geiger testified that an individual with that name was "previously involved or allegedly involved in a shooting situation." (Tr. at 24). Officer Geiger further testified:

> Q: If you have information also that an individual you are dealing with is a suspect in a recent shooting, would that give you any concerns about your encounters with them?
>
> A: Correct. At that point in time it would be any traffic stop on them would be considered a high risk stop, which would be a felony stop with our weapons drawn on them.
>
> Q: Okay. And would you conduct a pat down search if you encounter an individual who is a recent suspect in a shooting?
>
> A: Absolutely, and we would do a safety sweep of the vehicle as well.

(Tr. at 24–25). After running Aron's name through the Spillman system, Officer Geiger discovered that Aron had active warrants. (Tr. at 25). Likewise, the female passenger, who remained in the vehicle awaiting an ambulance, was identified and also discovered to have active warrants.

Officer Geiger requested the vehicle be searched for weapons based upon his belief that a weapon may be located inside. Detective Doug Gillespie assisted with the search of the vehicle and located a Ruger firearm inside the Nissan. Aron was formally placed under arrest and refused medical assistance once the ambulance arrived. The passenger received medical treatment and was

transported to the hospital. Given the state of the Nissan (it was inoperable in the middle of the roadway) and the absence of a licensed driver on the scene, the Nissan was eventually towed.

Based on the above facts, Defendant's Motion to Suppress seeks suppression of the firearm seized during this warrantless search of the Nissan.

**DISCUSSION**

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. "A search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000) (citing *Joy v. Penn–Harris–Madison Sch. Corp.*, 212 F.3d 1052, 1058 (7th Cir. 2000); *United States v. Strache*, 202 F.3d 980, 984 (7th Cir. 2000)). Defendant's motion does not challenge the justification for the stop of the vehicle nor does it challenge the pat down and subsequent search of Aron that uncovered the ammunition. What Defendant does contest is the warrantless search of the Nissan. Defendant contends that because the Defendant was in handcuffs and no exigent circumstances existed, officers should have secured the vehicle and sought a warrant prior to searching it. Thus, he contends the search of the Nissan was unreasonable and violated his Fourth Amendment rights.

The Government sets forth a bouquet of theories to validate the search including that: the Defendant abandoned the vehicle when he fled from it; the officer had reasonable suspicion to believe a firearm was in the vehicle; probable cause existed for the search; the search of the vehicle was incident to arrest; and the firearm would have been inevitably discovery during an inventory search. Because multiple theories offered by the Government authorized the warrantless search, the Court concludes that the search was reasonable and no Fourth Amendment violation occurred.

The most straightforward of the justifications offered by the Government to sustain the search is that the Defendant lacked a reasonable expectation of privacy in the Nissan when he exited it and fled on foot away from both Officer Geiger and the vehicle. It is by now axiomatic that "[a]bandoned property is not subject to Fourth Amendment protection." *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) and *Basinski*, 226 F.3d at 836 (both citing *Abel v. United States,* 362 U.S. 217, 241 (1960)). That is, "no person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836 (citing *Hester v. United States*, 265 U.S. 57, 58 (1924); *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996)).

"To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched." *Pitts*, 322 F.3d at 456 (citing *Basinski*, 226 F.3d at 836). The test is objective and, therefore, "the defendant's subjective desire to later reclaim an item is irrelevant." *Id.*; *see also United States v. Rem*, 984 F.2d 806, 810–11 (7th Cir. 1993). Rather, the court must "look solely to the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search." *Pitts*, 322 F.3d at 456 (citing *Basinski*, 226 F.3d at 836). In determining whether an object has been abandoned, courts must consider the totality of the circumstances, paying "particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Basinski*, 226 F.3d at 837 (citations omitted).

The Government contends, and rightly so, that the Defendant abandoned the vehicle when he exited it and left it behind to avoid being apprehended by police. In his brief, the Defendant does not contest the fact that after he crashed the vehicle, he fled from it, leaving the keys in the

5

ignition and the vehicle running. A multitude of courts, including the Seventh Circuit, have held that this conduct constitutes abandonment of the automobile and forfeiture of any expectation of privacy. *See United States v. Vasquez,* 635 F.3d 889 (7th Cir. 2011) (upholding denial of motion to suppress because the defendant abandoned his car after speeding away when police attempted to arrest him and then running away from the vehicle after he parked it in a nearby Walmart parking lot); *see also e.g.*, *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (affirming conclusion that suppression was not warranted where defendant "relinquished any legitimate expectation of privacy" when he fled from scene of lawful traffic stop, led officers on high-speed chase, then left the vehicle behind after it was rendered inoperable); *United States v. Edwards,* 441 F.2d 749, 751 (5th Cir. 1971) (holding that the defendant had no reasonable expectation of privacy with respect to his automobile because his "right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot."); *United States v. Castro-Perez,* 2021 WL 488260 (D.P.R. Feb. 10, 2021) (defendant's act of exiting his vehicle and running away evidence his voluntary relinquishment of his privacy interest); *United States v. Espinoza-Reynosa*, No. 2020 WL 949118, at *5 (D. Minn. Feb. 27, 2020) ("…case law conclusively establishes that Defendant abandoned his vehicle—and any accompanying Fourth Amendment privacy interest in it—after crashing it, leaving it behind, and fleeing on foot."); *United States v. Magana,* 2007 WL 680784, at *5 (D.Nev. Feb.28, 2007) (the defendant cannot raise a Fourth Amendment violation because when he abandoned his vehicle, he likewise abandoned his expectation of privacy); *United States v. Lynch,* 290 F. Supp. 2d 490, 497 (M.D. Pa. 2003) (concluding that search was lawful because defendant abandoned his vehicle by "flee[ing] the car on foot, leaving the door wide open and the motor and headlights running" while "police officers in police cars looked on."); *United*

*States v. Bailey*, 2009 WL 524730, at *2 (D. Mass. 2009)("[W]ith the police in pursuit, Bailey jumped from a moving SUV and fled, leaving the SUV to lurch onto a sidewalk, with the door still open, the engine still running, and the keys in the ignition [...] abandon[ing] the SUV and forfeit[ing] any reasonable expectation of privacy in the SUV.").

Indeed, it is no stretch for this Court to conclude that the totality of the circumstances points to Aron's voluntary relinquishment of his privacy interest in the vehicle when he left it in the parking lot, engine running and fled on foot to avoid arrest. *See United States v. Pittman,* 411 F.3d 813, 817 (7th Cir. 2005) ("If the driver of a car flees at the approach of the police, this is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it."). Here, the firearm was recovered in a vehicle from which the Defendant fled when he encountered police. The Defendant, thus, visibly abandoned any interest in that vehicle and its contents and hence, no Fourth Amendment interest of his was implicated in the search.

While the above finding sufficiently brings the discussion to an end, the Government invokes alternative justifications for the search, which the Court shall briefly address here. First, the Government contends that even if Aron had not abandoned the vehicle, officers would have been permitted to search the passenger compartment of the vehicle without a warrant because Officer Geiger had a reasonable belief, once he found ammunition on the Defendant, that the Defendant may have a weapon in the vehicle and the Defendant's passenger may have had access to it. *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (holding that if an officer has a reasonable suspicion that the driver or passenger is armed or may be able to gain immediate control of a weapon, he may conduct a protective search of the passenger compartment for accessible weapons.); *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004). Thus, the Government

7

urges that reasonable suspicion existed to conduct a protective search of the passenger compartment for accessible weapons.

Here, Aron's behavior gave rise to the reasonable suspicion necessary to justify the intrusion into the vehicle. Officer Geiger witnessed the Defendant "messing around with something" and making furtive movements inside the passenger compartment before fleeing the vehicle. Then, once in handcuffs and searched, ammunition was found on the Defendant. All the while, the passenger remained in the vehicle – a potential threat to the safety of officers if she had access to a firearm. It was therefore reasonable for Officer Geiger to be concerned that the passenger may have access to a weapon inside the vehicle. With respect to this issue, the Defendant argues that he was "detained and secured away from the vehicle searched and thus had no access to the vehicle" where he could gain control of a weapon. (Dfdt's Brief, ECF No. 41, at 5). What's more, he says, is that there is no evidence that the passenger made furtive movements to justify any suspicion that she had access to the weapon. However, this argument seems to fly in the face of the purpose of a protective search. Officers had the Defendant's furtive movements, arguably consistent with weapons concealment, and they had the ammunition found on Aron from the pat down. These specific, articulable bases justified a search of the vehicle for a weapon that may be accessible to any occupant inside. *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (noting the same risk to officers applies "whether the occupant of the stopped car is a driver or passenger").

Next, the Government argues that the officers had probable cause to search the vehicle under the automobile exception to the warrant requirement. (Govt. Resp., ECF No. 42). The automobile exception "permits the police to search a vehicle if there is probable cause to believe it contains evidence of criminal activity." *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015); *see also United States v. Reaves*, 796 F.3d 738 (7th Cir. 2015) (Under

8

the automobile exception, law enforcement officers "do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity")(citations omitted). When probable cause exists to search a vehicle, the authority to search "encompasses any area of the vehicle where evidence of the crime might be found," including "containers within the vehicle that could hold such evidence." *Charles*, 801 F.3d at 860. *See also United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020)(an officer may search a vehicle without a warrant if there is probable cause). Probable cause exists "if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) (internal quotation marks omitted). The relevant circumstances encompass the entire factual picture, including rational inferences drawn from the facts based upon the experience of the officers; and thus, the existence of probable cause "does not deal with hard certainties," but rather "with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

In this case, the entire factual record suggests that, even in the absence of Aron fleeing from the vehicle, or in the absence of reasonable suspicion, the automobile exception would apply to its search. As set forth above, when the vehicle came to rest after Aron crashed it, Officer Geiger saw defendant leaning over the center console area "messing around with something." (Tr.at 13). Officer Geiger testified that these movements indicated to him that the driver was reaching for a weapon. (*Id.* at 14). Aron then fled the vehicle on foot and upon being caught, Officer Geiger located ammunition on him. Officer Geiger testified that in his experience it is common for ammunition and guns to be carried together. Once Officer Geiger identified Aron, he had further knowledge that Aron was a suspect in a recent shooting and had active warrants. From all these circumstances, officers on scene certainly had probable cause to believe that contraband

or evidence of a crime may be found inside the vehicle. Thus, pursuant to the automobile exception, the officers were also authorized to conduct a warrantless search of the vehicle.

Finally, the Government invokes the inevitable discovery doctrine. Aron was lawfully arrested at the scene (or at least he doesn't argue differently) and his passenger was taken by ambulance to the hospital. There was no one present to take custody of his vehicle. So, the Government argues, the police towed it, and the vehicle would have been subjected to an inventory search pursuant to established procedures. (Tr. at 47: "If a vehicle is being towed, yes, we do an inventory."; Tr. at 28: "…[w]hen we tow a vehicle, we have to do an inventory of the vehicle …for our safety, but also …so we can confirm what items of value are in the vehicle."). If the firearm had not already been found, the Government asserts it would have been discovered during this lawful inventory search.

"The inevitable discovery doctrine provides that illegally obtained evidence will not be excluded if the government 'can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Haldorson*, 941 F.3d 284, 293 (7th Cir. 2019), quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984). This principle is often applied in the context of an inventory search of a vehicle impounded after an arrest. *See, e.g., Haldorson*, 941 F.3d at 293 (once Haldorson was arrested, police officers would have towed his vehicle to the police station and conducted an inventory search, so that the drugs and explosives would inevitably have been discovered); *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019) ("Once Cherry had been arrested, the agents would have removed his car from the parking lot and it would have been subject to an inventory search, as is the usual protocol").

10

Aron has not challenged his arrest and the inevitable inventory search of his vehicle would have yielded the seizure of the firearm, if it had not already been found during the search at the scene. *See United States v. Anderson*, 2020 WL 7417964 (N.D. Ind. December 18, 2020) (where defendant failed to challenge his arrest and the firearm would have inevitably been located during an inventory search of the vehicle, exception to warrant requirement applied). Thus, to the extent any of the other rationales offered by the Government fail to justify the warrantless search of the Defendant's vehicle, inevitable discovery comes into play.

## CONCLUSION

Based on the foregoing, the Defendant's Motion to Suppress (ECF No. 30) is DENIED. SO ORDERED on May 13, 2021.

                s/ *Holly A. Brady*
                JUDGE HOLLY A. BRADY
                UNITED STATES DISTRICT COURT